Lincoln D. Bandlow, Esq. (CA #170449)
lbandlow@foxrothschild.com
Fox Rothschild LLP
Constellation Place
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Tel.: (310) 598-4150
Fax: (310) 556-9828

Attorney for Plaintiff
Strike 3 Holdings, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>JOHN DOE subscriber assigned IP address 99.185.0.103,<br><br>                    Defendant. | Case Number: 2:18-cv-02637-MCE-CKD<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT JOHN DOE'S MOTION TO QUASH THE SUBPOENA ON AT&T AND FOR A MODIFICATION OF THE ORDER AT DOCKET 7** |

1

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II.  FACTS .............................................................................................................. 2

III.  LEGAL STANDARD ......................................................................................... 3

IV.  ARGUMENT ..................................................................................................... 3

    A.  Plaintiff's Complaint States a Claim for Relief and *Cobbler* Is Not Grounds to Quash Plaintiff's Third-Party Subpoena ................................................. 4

    B.  Bare Denials of Liability Are Not Grounds to Quash a Subpoena ......................... 4

        1.  *Cobbler* Does Not Require A Heightened Pleading Standard In BitTorrent Litigation ....................................................................................... 5

        2.  The DC Opinion's Treatment of the Arista Factors Should Not Supplant This Court's Well-Reasoned Analysis of the Same Factors ................................. 9

        3.  Defendant's Request for an Evidentiary Hearing Is Unavailing ................... 14

        4.  Defendant's Counsel's Meet-and-Confer Was Wholly Deficient ................. 15

V.  CONCLUSION ................................................................................................. 18

i

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

## **TABLE OF AUTHORITIES**

**Cases**

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)........................................................ 9

*Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251, 23 S. Ct. 298, 300, 47 L. Ed. 460
    (1903) ............................................................................................................................. 13

*Clear Skies Nevada, LLC v. Kainu*, No. CV 16-811-AC, 2017 WL 4021121 (D. Or. Aug. 21,
    2017)............................................................................................................................. 12

*Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018)................................... 1, 3, 7

*Crocs, Inc. v. Effervescent, Inc.*, No. CV 06-00605 (PAB)(KMT), 2017 WL 3888455, at *2 (D.
    Colo. Jan. 30, 2017)...................................................................................................... 3

*Evans v. City of Vallejo*, No. CV 17-01619 TLN AC, 2018 WL 4582605 (E.D. Cal. Sept. 25,
    2018).............................................................................................................................. 17

*Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1036 (9th Cir. 2018) ..................... 5, 9, 12

*Heilman v. Wasko*, No. CV 12-01966 (JAM)(AC), 2015 WL 1498885 (E.D. Cal. Mar. 31, 2015)
    .................................................................................................................................. 3

*Jartech, Inc. v. Clancy*, 666 F.2d 403, 406 (9th Cir. 1982).......................................... 13

*Khumba Film (PTY.), Ltd. v. Does 1-14*, No. CV 14-02075-WYD-MEH, 2014 WL 4494764 (D.
    Colo. Sept. 12, 2014)................................................................................................... 14

*Kirschner v. Klemons*, No. CV 99-4828 (RCC), 2005 WL 1214330 (S.D.N.Y. May 19, 2005).. 3

*Malibu Media LLC v. Doe*, No. CV 13-12178, 2013 WL 3945978 (E.D. Mich. July 31, 2013).. 6

*Malibu Media, LLC v. Bui*, No. CV 13-162, 2014 WL 12469955 (W.D. Mich. July 21, 2014) 11

*Malibu Media, LLC v. Doe*, No. CV 15-2281, 2018 WL 5841866 (M.D. Pa. Nov. 8, 2018)..... 12

*Malibu Media, LLC v. Doe*, No. CV 15-3504(JFB)(SIL), 2016 WL 4444799 (E.D.N.Y. Aug. 23,
    2016).............................................................................................................................. 12

*Malibu Media, LLC v. Doe*, No. CV 15-4381 JFK, 2015 WL 4923114 (S.D.N.Y. Aug. 18, 2015)
    .................................................................................................................................. 14

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification
of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

*Malibu Media, LLC v. Doe*, No. CV 16-01006 (WHA), 2016 WL 3383830 (N.D. Cal. June 20, 2016) ........................................................................................................................... 3

*Malibu Media, LLC v. Doe*, No. CV 16-1733-JAM-KJN, 2017 WL 840652 (E.D. Cal. Mar. 3, 2017) ........................................................................................................................... 18

*Malibu Media, LLC v. Huseman*, No. CV 13-02695-WYD-MEH (D. Colo. November 7, 2014) ........................................................................................................................... 11

*Malibu Media, LLC v. John Doe*, No. 14-10155-KBF (S.D.N.Y. Dec. 9, 2015) ....................... 12

*Malibu Media, LLC v. John Does 1-16*, 902 F. Supp. at 698 ................................................... 7

*Malibu Media, LLC v. Tashiro*, No. CV 13-00205-WTL, 2015 WL 2371597 (S.D. Ind. May 18, 2015) ........................................................................................................................... 11

*Malibu Media, LLC v. Weaver*, No. CV 14-01580-VMC-TBM, (M.D. Fla. Dec. 11, 2015) ..... 11

*Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) ............ 13

*Schaefer v. State Bar of California*, 26 Cal. 2d 739, 748, 160 P.2d 825, 829 (1945) ................... 4

*Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012) ................... 3

*Strike 3 Holdings v. John DOE, subscriber assigned IP address 73.225.38.130*, 2:17-cv-01731-TSZ, WDWA 10/2/2018 ............................................................................................. 3

*Strike 3 Holdings, LLC v. [REDACTED]*, 18-cv-00380 (D. Md. September 4, 2018) ............... 12

*Strike 3 Holdings, LLC v. [REDACTED]*, 18-cv-01875 (D. Md. December 6, 2018) ............... 12

*Strike 3 Holdings, LLC v. [REDACTED]*, 18-cv-01899-TDC (D. Md. November 28, 2018) .... 12

*Strike 3 Holdings, LLC v. Doe*, No, CV 17-07058-EJD (N.D. Cal. Mar. 6, 2018) ..................... 12

*Strike 3 Holdings, LLC v. Doe*, No. CV 17-01731-TSZ (W.D. Wash. Dec. 20, 2018) ............. 15

*Strike 3 Holdings, LLC v. Doe*, No. CV 17-07006-LB, 2017 WL 6594008 (N.D. Cal. Dec. 21, 2017) ........................................................................................................................... 6

*Strike 3 Holdings, LLC v. Doe*, No. CV 17-2317-JAH(BLM) (S.D. Cal. May 18, 2018) .......... 12

*Strike 3 Holdings, LLC v. Doe*, No. CV 17-9659 (VEC), 2018 WL 2371730 (S.D.N.Y. May 23, 2018) ........................................................................................................................... 5

iii

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

*Strike 3 Holdings, LLC v. Doe*, No. CV 18-00571 EAW, 2018 WL 6166873 (W.D.N.Y. Nov. 26, 2018) ............................................................................................................... 4

*Strike 3 Holdings, LLC v. Doe*, No. CV 18-01015-CMH-MSN (E.D. Va. Oct. 24, 2018) ......... 12

*Strike 3 Holdings, LLC v. Doe*, No. CV 18-02019-YGR (N.D. Cal. Oct. 1, 2018) ................... 13

*Strike 3 Holdings, LLC v. Doe*, No. CV 18-03763-DLI-SJB (N.Y.E.D. Nov. 14, 2018) ........... 13

*Strike 3 Holdings, LLC v. Doe*, No. CV 18-1425, 2018 WL 6027046 (D.D.C. Nov. 16, 2018) . 1, 4, 9, 11

*Strike 3 Holdings, LLC v. Doe*, No. CV 18-1856 (D. Nev. Oct. 17, 2018) .................................. 8

*Strike 3 Holdings, LLC v. Doe*, No. CV 18-2648 (VEC), 2019 WL 78987 (S.D.N.Y. Jan. 2, 2019) ......................................................................................................................... 8

*Strike 3 Holdings, LLC v. Doe*, No. CV 18-2720-GPC(WVG), 2018 WL 6649504 (S.D. Cal. Dec. 18, 2018) .................................................................................................. 7

*Strike 3 Holdings, LLC v. John Doe Subscriber assigned IP address 67.170.214.219*, No. CV 18-02019-YGR (EDL) (N.D. Cal. Sep. 14, 2018) ................................................. 7

*Strike 3 Holdings, LLC v. John Doe Subscriber Assigned IP Address 24.120.54.52*, No. 18-01857, (D. Nev. October 28, 2018) ....................................................................... 9

*Strike 3 Holdings, LLC v. John Doe Subscriber Assigned IP Address 70.175.32.21*, No. 18-01540 (D. Nev. October 22, 2018) ......................................................................... 8

*W. Coast Prods., Inc. v. Does 1-351*, No. CV 4:12-00504, 2012 WL 2577551 (S.D. Tex. July 3, 2012) .......................................................................................................... 7

*Williams v. Cahill*, No. 4-8301-G, 2014 WL 1234218 (Cal. Ct. App. Mar. 26, 2014) ................ 4

*Winters v. Jordan*, No. CV 09-0522-JAM-KJN, 2013 WL 5348092 (E.D. Cal. Sept. 23, 2013) ................................................................................................................. 16, 17

**Rules**

E.D. Cal. LR 251(b) .................................................................................................. 15

Fed. R. Civ. P. 45(d)(3)(A) ........................................................................................ 3

U.S. CONST. Art. 1, § 8, cl. 8 ..................................................................................... 14

iv

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") respectfully submits the following Opposition to Defendant John Doe's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7 ("Motion") issued upon the Internet Service Provider ("ISP").

### I.   INTRODUCTION

Plaintiff cannot identify Defendant and this case cannot progress without the information requested in Plaintiff's subpoena to Defendant's ISP.  Without the requested information, Plaintiff can neither conduct a further investigation of its claims nor serve process.  Defendant's skeletal Motion cites to two cases that, if applied as Defendant suggests, would kill this case in the crib.  Defendant's reliance on these cases, however, is misplaced, and the Motion does not state a valid ground upon which a subpoena can be quashed or modified.

First, *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018) does not stand for the proposition that defendants who infringe copyrighted works anonymously over the BitTorrent network are immune from early discovery.  Indeed, *Cobbler*'s holding has been litigated throughout this Circuit, and the courts have unequivocally found that it does not apply to this preliminary, early discovery stage since it would not serve the interests of justice.

Second, while Defendant attempts to shoehorn in the reasoning from *Strike 3 Holdings, LLC v. Doe*, No. CV 18-1425, 2018 WL 6027046 (D.D.C. Nov. 16, 2018), he or she does not explain why that court's analysis of the *Arista* factors should supplant this Court's own findings.  Indeed, to date, no other court has followed that opinion (which is now on appeal).  In fact, instead of following it, multiple courts have asked for briefing on it and when it was provided, *all* of those courts have refused to adopt or follow its reasoning in any way.

Finally, Defendant's counsel's attempt at a meet and confer was insufficient, violated the local rules and this Court's own order, and has now resulted in wasteful motion practice.  For this alone, Defendant's Motion should be denied, but as discussed below, the Motion fails on the merits as well.

1

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

## II.   <u>FACTS</u>

Plaintiff owns the intellectual property to award-winning adult motion pictures. *Declaration of Greg Lansky*, Dkt. 6-2, at 5–6 ¶¶ 3, 19.  Strike 3's philosophy is to hold itself above the rest by having higher budgets, higher compensation for its actors and actresses, and higher end productions.  *Id.* at ¶¶ 7–8, 11–13, 15.  Despite its success, Strike 3 does not rest on its back-catalogue and is continually seeking out new opportunities and ventures to provide subscribers with a better experience.  *Id.* at ¶ 15.  Plaintiff's business has "raised the bar" for the rest of the industry, "leading more adult studios to invest in better content, higher pay for performers, and to treat each performer like an artist."  *Id.* at ¶ 25.

As a result of its higher production and talent costs, Strike 3 is sensitive to the loss of revenue and threat to the company caused by mass copyright infringement.  *Id.* at ¶ 22.  Despite attempting to mitigate the infringement outside the courts, *see id.* at ¶ 26 (sending thousands of DMCA takedowns to infringing websites), lawsuits like this have become a necessary option of last resort.  *Id.* at ¶ 27.  Plaintiff understands the delicate nature of these suits and otherwise respects the desire by consumers to keep their content choices private, and thus Plaintiff has put in place protocols to protect those interests, including inviting this Court to implement a protective order, s*ee* Dkt. 6-1, at 16, which the Court has ordered.  *See* Dkt. 7, at 6, ¶ 12 ("<u>Plaintiff is cautioned that, until permission is given by the court, it is not to reveal the identity of the defendant in or out of court.</u>") (emphasis original).

Doe Defendant is accused of downloading, distributing, and hence infringing numerous works owned by Plaintiff across the BitTorrent network.  *See generally* Dkt. 1 and accompanying Exhibit "A" listing the works-in-suit.  Plaintiff moved to serve an early subpoena on John Doe's Internet Service Provider for the limited purpose of identifying and serving Defendant (maintaining his anonymity) in accordance with the Federal Rules of Civil Procedure.  Dkt. 6.  The Court granted Strike 3's motion on November 14, 2018 (Dkt. 7), Plaintiff served its subpoena on Defendant's ISP, and Defendant filed a Motion to Quash on December 16, which makes up the present dispute before the Court.

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

### III.   <u>LEGAL STANDARD</u>

"Under Federal Rule of Civil Procedure 45, any party may serve a subpoena that commands a non-party to produce documents, electronically stored information, or tangible things . . . ." *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012) (citation and internal quotations omitted). "[T]he party seeking to quash a subpoena bears a heavy burden of proof." *Kirschner v. Klemons*, No. CV 99-4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (citation omitted). "Rule 45(d)(3)(A) identifies . . . circumstances in which a court is required to grant a motion to quash or modify a subpoena." *Heilman v. Wasko*, No. CV 12-01966 (JAM)(AC), 2015 WL 1498885, at *8–9 (E.D. Cal. Mar. 31, 2015).

These circumstances arise when the subpoena "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." *Malibu Media, LLC v. Doe*, No. CV 16-01006 (WHA), 2016 WL 3383830, at *2 (N.D. Cal. June 20, 2016) (quoting Fed. R. Civ. P. 45(d)(3)(A)).  Additionally, a subpoena may be quashed or modified if it requires "(i) disclosing a trade secret or other confidential . . . information;" or (ii) disclosing certain expert opinions. *Id.*  "No other grounds are listed." *Crocs, Inc. v. Effervescent, Inc.*, No. CV 06-00605 (PAB)(KMT), 2017 WL 3888455, at *2 (D. Colo. Jan. 30, 2017) (collecting cases).  "Absent a finding by a court that a valid basis exists to quash a subpoena, the party receiving the subpoena *must comply* with it.  *Id.* (collecting cases) (emphasis original).

### IV.   <u>ARGUMENT</u>

It is important to note from the outset that *nothing* discussed in Defendant's Motion constitutes grounds to quash a subpoena under Rule 45(d).  Defendant only cites to two cases[1] throughout the Motion, *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018) and

---

[1] Defendant mentions a third case only to point out that Plaintiff is aware of *Cobbler*.  *See* Dkt. 10, at 6 (citing *Strike 3 Holdings v. John DOE, subscriber assigned IP address 73.225.38.130*, 2:17-cv-01731-TSZ, WDWA 10/2/2018 at Docket 57).

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

*Strike 3 Holdings, LLC v. Doe*, No. CV 18-1425, 2018 WL 6027046 (D.D.C. Nov. 16, 2018),

and does not discuss or analyze either case at particular length or detail.  For the following

reasons, neither case mentioned supports Defendant's Motion.  In fact, *Cobbler* actually

*supports* the grant of the subpoena in this case and the denial of this Motion.

### A.   Plaintiff's Complaint States a Claim for Relief and *Cobbler* Is Not Grounds to Quash Plaintiff's Third-Party Subpoena

Without explanation or citation, Defendant contends that Plaintiff' "had an obligation to

bring *Cobbler* to the Court's attention in its motion [for leave to issue its third-party subpoena.]"

*See* Dkt. 10, at 5.  It is true that attorneys, owing a duty of candor, "may not ignore legal

authority that is *directly adverse* to his or her position," *see Williams v. Cahill*, No. 4-8301-G,

2014 WL 1234218, at *11 n.6 (Cal. Ct. App. Mar. 26, 2014) (emphasis supplied), but it is no

violation if "it does not appear that [party] intentionally attempted to mislead the court."

*Schaefer v. State Bar of California*, 26 Cal. 2d 739, 748, 160 P.2d 825, 829 (1945).  Plaintiff did

not discuss *Cobbler* in its Application because it is simply irrelevant at this early discovery

stage.  This has been confirmed by *multiple* courts in this Circuit.  *Infra* IV.A.2.  Indeed, the fact

that Defendant merely pulls a quote from *Cobbler*, while entirely failing to explain why it is

grounds to quash the subpoena, is telling.

### B.   Bare Denials of Liability Are Not Grounds to Quash a Subpoena

Defendant insinuates throughout his or her Motion that Defendant is not the infringer.

*See generally* Dkt. 10, at 4 (emailing Plaintiff requesting dismissal because Defendant "is

elderly and has no idea what this case is about").  This acts as a mere denial of liability and "is

not a proper basis for quashing a subpoena."  *Strike 3 Holdings, LLC v. Doe*, No. CV 18-00571

EAW, 2018 WL 6166873, at *5 (W.D.N.Y. Nov. 26, 2018) (collecting cases).  "[T]his

subpoena will allow Plaintiff to obtain the information necessary to serve Defendant with the

Complaint in this action, thereby allowing Defendant to defend herself against Plaintiff's

accusations.  Under these circumstances, Plaintiff's subpoena is entirely proper."  *Strike 3

Holdings, LLC v. Doe*, No. CV 17-9659 (VEC), 2018 WL 2371730, at *2 (S.D.N.Y. May 23,

4

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

2018).  Defendant, however, tries to mask this defective argument by simply shouting "Cobbler, Cobbler" without providing any analysis.  That case, however, does not support Defendant's argument in any way.  In fact, it defeats Defendant's Motion.

### 1.   *Cobbler* Does Not Require A Heightened Pleading Standard In BitTorrent Litigation

The holding and facts surrounding *Cobbler* are far more nuanced than the two sentences quoted by Defendant suggests.  From the outset, it must be pointed out that *Cobbler* involved a *ruling on a motion for attorneys' fees after the completion of litigation*.  Thus, in that case, the Ninth Circuit held that a plaintiff in a BitTorrent copyright infringement action had not acted objectively reasonable when it continued to pursue an action against a defendant, after having filed an amended  complaint and after conducting full discovery, when it became clear that "[t]he only connection between [the defendant] and the infringement was that he was the registered internet subscriber and that he was sent infringement notices."  901 F.3d at 1147.  Importantly, the Ninth Circuit noted in its ruling that the plaintiff there had actually "acknowledged that its independent investigation did not permit identification of 'a specific party that is likely to be the infringer.'"  *See id*.  In that case, the defendant was an administrator at an elderly care facility and was simply the subscriber for the facility's internet services, but there was no evidence that he (rather than any number of people living in the facility who had access to the internet) was the infringer.

Of key importance here is that the Ninth Circuit reached this conclusion *after the district court permitted the plaintiff to subpoena the ISP for the defendant's identifying information*, conduct an initial investigation into the defendant, and even depose defendant.  *See id*.  In fact, just a few weeks prior to publishing *Cobbler*, the Ninth Circuit ruled in a similar case that "allow[ing] copyright holders to seek limited discovery from an Internet Service Provider to establish a potential infringer's identity[,]" along with permitting a plaintiff to depose the defendant early in the litigation was  "practical" and "sensible" and thus wholly proper.  *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1036, 1038 (9th Cir. 2018).

5

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

1   In fact, rather than stand for the proposition that Defendant wants it to, *Cobbler* actually

2   makes clear that  early discovery, such as what Plaintiff is seeking here, is an entirely valid

3   "*part of the puzzle*" for determining the identity of the infringer and, thus, such early discovery

4   is wholly appropriate.  901 F.3d at 1145 (emphasis supplied).  At this early stage in litigation,

5   where there exists the presumption of facts in favor of Plaintiff, "Strike 3 Holdings has

6   demonstrated that its copyright claim could withstand a motion to dismiss" and "has shown that

7   the discovery it seeks is reasonably likely to lead to identifying information that will permit

8   service of process on the Doe defendant."  *Strike 3 Holdings, LLC v. Doe*, No. CV 17-07006-

9   LB, 2017 WL 6594008, at *2–3 (N.D. Cal. Dec. 21, 2017).  Particularly because of the limited

10   information available before jurisdictional discovery, even though "there is a possibility that a

11   third party has somehow gained access to Defendant's IP address, *the more likely explanation is*

12   *that it is Defendant who is distributing Plaintiff's works*. This is all that is required to plausibly

13   state a claim for relief on which relief may be granted."  *Malibu Media LLC v. Doe*, No. CV 13-

14   12178, 2013 WL 3945978, at *4 (E.D. Mich. July 31, 2013).

15   Without knowing what the discovery will reveal, Plaintiff cannot say with certainty that

16   the discovery will always identify the infringer, but that is the reason the Ninth Circuit in

17   *Cobbler* used the words "standing alone" – confirming that a plaintiff in a BitTorrent

18   infringement case such as this case gets to *at least* learn the identity of the subscriber and then

19   investigate to determine if the subscriber is the infringer.  Once that name and other identifying

20   information is provided, if that information "standing alone" does not support the assertion that

21   the subscriber is the infringer – *i.e.,* if a follow-up investigation does not bear fruit or points

22   elsewhere – then it may not be proper to *further proceed* with a case.  *But the plaintiff gets to*

23   *start with that information*.  And the only way to get that information is through the subpoena

24   Plaintiff seeks to serve on the ISP.

25
26          [I]t is reasonable to use an IP address as a starting point to obtain identifying
            information about a Doe Defendant who, through digital forensic means, has been
27          tied to the torrent swarm in issue. The identifying information allows Plaintiff to
            make a good faith investigation into whether a particular individual has a reliable
28

6

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification
of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

factual connection to the IP address associated with the swarm. If Plaintiff learns that the IP address is not a reliable identifier for a person, who Plaintiff in good faith can show committed an alleged legal wrong, Plaintiff has an obligation under Federal Rule of Civil Procedure 11 to cease pursuit of the claim against that individual.

*W. Coast Prods., Inc. v. Does 1-351*, No. CV 4:12-00504, 2012 WL 2577551, at \*4 (S.D. Tex. July 3, 2012) (denying motion to quash); *Malibu Media, LLC v. John Does 1-16*, 902 F. Supp. at 698 ("[T]he information provided by the ISPs in response to the subpoenas will not necessarily reveal the identities of the actual infringers, but may, with other discovery, lead to the infringers' identities").

As a sister court recently held, the discovery Plaintiff seeks "is likely to identify the alleged infringer or help Plaintiff secure the identity of the alleged infringer by asking for the subscriber's help or conducting its own further investigation of who might be using the IP address to access the BitTorrent protocol." *Strike 3 Holdings, LLC v. John Doe Subscriber assigned IP address 67.170.214.219*, No. CV 18-02019-YGR (EDL), at \*6–7 (N.D. Cal. Sep. 14, 2018) (denying motion to quash), attached hereto as concurrently-filed Exhibit A.  The Court further noted that "[t]he Ninth Circuit's recent decision in *Cobbler Nevada, LLC v. Gonzalez*, 2018 WL 4055766 (9th Cir. Aug. 27, 2018) *ensures that Plaintiff will not be able to rely on a bare allegation that Defendant is the registered subscriber of the IP address associated with infringing activity." Id.* (emphasis supplied); *accord Strike 3 Holdings, LLC v. Doe*, No. CV 18-2720-GPC(WVG), 2018 WL 6649504, at \*3 (S.D. Cal. Dec. 18, 2018) ("Once Strike 3 learns the subscriber's identity, it cannot rely on a bare allegation that he or she is the registered subscriber of an IP address associated with infringing activity to state a plausible claim for direct or contributory copyright infringement.  *However, at this stage of these proceedings, and upon the record presented, Strike 3 properly may serve discovery to ascertain the potential defendant's identity.*") (citing *Cobbler Nevada*, 901 F.3d at 1144) (emphasis added).  Indeed, there is no doubt that *Cobbler* raises the pleading standard *when a plaintiff possesses the identity of the Defendant*, but it does not require it at this stage of the litigation,

7

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

1  when Plaintiff does not yet have that information.[2]  As the District Court of Nevada recently

2  held, "[i]nterpreting *Cobbler* to require plaintiffs to identify defendants without allowing

3  plaintiffs the tools to do so would not serve the interests of justice."  *Strike 3 Holdings, LLC v.*

4  *Doe*, No. CV 18-1856, at *2 (D. Nev. Oct. 17, 2018), attached hereto as concurrently-filed

5  Exhibit B.

6          Importantly, at this stage of the litigation, without knowing who Defendant is, Plaintiff

7  cannot yet use its evidence to connect Defendant to the infringement.  This is true of nearly

8  every copyright infringement claim based on infringement through the Internet.  However,

9  nothing in *Cobbler* or *Glacier* would indicate the Ninth Circuit sought to prevent copyright

10  holders from fighting Internet piracy all together by prohibiting the subpoenaing of a

11  subscriber's identity.  *See Strike 3 Holdings, LLC v. John Doe Subscriber Assigned IP Address*

12  *70.175.32.21*, No. 18-01540, n.1 (D. Nev. October 22, 2018) ("[T]he Court is aware of no case

13  law preventing the discovery of a doe defendant's identity based on the copyright holder's

14  current inability to meet the *Cobbler* pleading standard").  To the contrary, *Glacier* specifically

15  recognizes that a case such as this one are true to the purpose of the Copyright Act:

16          Inherent in the Act's purpose is that 'a copyright holder has always had the legal
17          authority to bring a traditional infringement suit against one who wrongfully
           copies.' In the Internet Age, such suits 'have served as a teaching tool, making
18          clear that much file sharing, if done without permission, is unlawful[,] and
           apparently have had a real and significant deterrent effect.

19

20  [2] This rationale was recently summed up by Judge Caproni in the Southern District of New
21  York:

22          The district court, however, considered this argument in the context of a motion
           to dismiss, not a motion to quash a subpoena. See id. In fact, prior to ruling on
23          the motion to dismiss, the district court allowed the plaintiff to subpoena the
           defendant's ISP to obtain the defendant's name—just as Plaintiff has done here.
24          Accordingly, following *Cobbler Nevada*, district courts in the Ninth Circuit have
           continued to allow plaintiffs to subpoena ISPs for defendants' contact
25          information, reasoning that the defendants' defenses to the claims are more
           properly resolved during a later-stage motion to dismiss.
26

27  *Strike 3 Holdings, LLC v. Doe*, No. CV 18-2648 (VEC), 2019 WL 78987, at *3 (S.D.N.Y. Jan.
28  2, 2019) (collecting cases).

8

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification
of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

896 F.3d at 1041 (internal citations omitted).  Other courts, too, have interpreted *Cobbler* as having no effect at this stage in BitTorrent copyright cases. *See Strike 3 Holdings, LLC v. John Doe Subscriber Assigned IP Address 24.120.54.52*, No. 18-01857, (D. Nev. October 28, 2018) (finding *Cobbler* inapplicable at this early stage since *Cobbler* "was dismissed after identifying the subscriber in the discovery process").  Hence, *Cobbler* is irrelevant at this early stage in litigation and is not grounds to quash Plaintiff's subpoena.

### 2.   The DC Opinion's Treatment of the Arista Factors Should Not Supplant This Court's Well-Reasoned Analysis of the Same Factors

Defendant, again, without a cogent explanation, brings to the Court's attention a recent opinion from the District Court for the District of Columbia, suggesting that this Court reconsider its earlier order.  *See* Dkt. 10, at 6–7; *Strike 3 Holdings, LLC v. Doe*, No. CV 18-1425, 2018 WL 6027046 (D.D.C. Nov. 16, 2018) (discussing *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)).  To the extent this two-sentence argument constitutes a motion for reconsideration, it is woefully inadequate and does not provide this Court or Plaintiff with even the minimum amount of notice upon which its argument rests.  It is also worth noting that Plaintiff respectfully disagrees with that Opinion's findings and has filed a Notice of Appeal with the Court of Appeals for the District of Columbia.  *Infra.*  Yet even a chartable attempt to flesh out a skeletal argument from Defendant's Motion demonstrates the defects in this argument.

In the D.C. Opinion, which made its holding without Plaintiff having the opportunity to address the court's perceived criticisms, the court held that Plaintiff failed to show good cause for its early subpoena because Plaintiff's request "lacks . . . specificity" and defendant's privacy interest could not be tolerably maintained, particularly because Plaintiff's motion pictures, though not obscene, were somehow "aberrantly salacious."  *See* No. CV 18-1425, 2018 WL 6027046 at *3–4.  The court also found that a protective order shielding defendant's identity from public disclosure "hardly seems fair" because it places the onus on defendants' to defend themselves and courts have been inconsistent in issuing these orders.  *See id.* at *3.

9

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

1    To be sure, *this* Court has already performed its own analysis of the *Arista* factors and

2    determined that Plaintiff *has* shown good cause for early discovery.  *See generally* Dkt. 7.  This

3    Court, like every other court that has reviewed Plaintiff's cases, did not find that Plaintiff's

4    motion pictures are obscene or "aberrantly salacious" (whatever that means and whatever

5    relevance that might have, if any).  Nor does it appear that this Court would freeze Plaintiff out

6    of early discovery because of the content of its motion pictures.  Upon examining the traditional

7    *Arista* factors, while the first four factors weigh in Plaintiff's favor, this Court held that, with

8    respect to defendant's privacy interest, that factors "weighs against granting plaintiff's request,

9    *without additional safe-guards*."  *Id.* at 3.  With this in mind, the Court issued procedural

10   protections for Defendant, including (¶ 5) forbidding Plaintiff to serve Defendant without

11   further order of the Court; (¶ 6–8) establishing an "informal conference" to discuss any potential

12   "motion to quash the subpoena[] if there are true and adequate grounds therefor"; (¶ 12) and

13   preventing Plaintiff from revealing Defendant's identity "until permission is given by the

14   court . . . ."  *Id.* at 5–6. (emphasis original).  Plaintiff never has (and never will) challenged any

15   of these protections, in fact, Plaintiff as a matter of policy *unilaterally asks courts to institute*

16   *protections regarding defendants' identities when it files its motions to be allowed to subpoena*

17   *an ISP*.

18   Indeed, Defendant seems to like and wants to take advantage of these protections as

19   evidenced by Defendant's counsel having filed a "notice of intent" to attend the informal

20   conference, yet Defendant went ahead and filed this Motion, thereby undermining the

21   efficiencies intended by the court's protective order.  *See* Dkt. 9.  The Court instituted all these

22   protections before Plaintiff issued its subpoena on Defendant's ISP.  Thus, Defendant received

23   these protections without being "dragged into court" or forced to hire counsel, and the D.C.

24   Opinion's concerns about defendant's privacy and undue associations with Plaintiff's content

25   are simply not in play here.

26   The D.C. Opinion, again without Plaintiff having a chance to chime in on the matter,

27   expressed skepticism of Plaintiff's technology, investigatory techniques, and its ability to

28                                                        10

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification
of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

identify infringers, noting "the Court will not accept the risk of misidentification."  *See* No. CV 18-1425, 2018 WL 6027046 at *4.  Although not explicitly mentioned by Defendant, the main concerns in the D.C. Opinion are, respectfully, misplaced.  Plaintiff utilizes IPP International U.G. ("IPP") as its investigator to track and collect evidence of infringement of its works over the BitTorrent network.  Rightsholders have been filing BitTorrent lawsuits since 2010, and although Plaintiff only began litigating in late 2017, the law and technology concerning online piracy has developed considerably.  Significantly, the accuracy of IPP's infringement detection system has been repeatedly established as having the ability to identify the infringer.

In 2013, after presiding over the first bellwether trial on BitTorrent litigation, and hearing expert testimony regarding IPP's system, the Honorable Judge Baylson found that IPP's technology was valid.  *Malibu Media, LLC v. Does*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013) ("The technology employed by its consultants . . . was valid.").  In that case, the defendant admitted to downloading the copyrighted works as well as wiping his desktop computer to conceal the infringements.  *Id.* at 788.  This is not the only time IPP's system has been tested; courts across the country have reviewed its findings, repeated holding favorably for rightsholders employing IPP's system.[3]  Although many of Plaintiff's cases against infringers

---

[3] The history of IPP's use, and its track record of success in the judiciary, runs deep.  A year after the bellwether trial, a rightsholder secured summary judgment after IPP's system identified defendant's IP address and defendant admitted to using the BitTorrent network to download and distribute plaintiff's works.  *See Malibu Media, LLC v. Bui*, No. CV 13-162, 2014 WL 12469955 (W.D. Mich. July 21, 2014).  A few months later, in another BitTorrent case using IPP's system, plaintiff's expert located the copyrighted works on defendant's hard drive.  *See Malibu Media, LLC v. Huseman*, No. CV 13-02695-WYD-MEH (D. Colo. November 7, 2014) [Dkt. 43].  And the following year, plaintiff's expert discovered that defendant deleted thousands of relevant files before producing his hard drives.  *Malibu Media, LLC v. Tashiro*, No. CV 13-00205-WTL, 2015 WL 2371597, at *16 (S.D. Ind. May 18, 2015), *report and recommendation adopted*, No. CV 13-205-WTL-MJD, 2015 WL 3649359 (S.D. Ind. June 11, 2015).  In that same case, the Court ultimately imposed terminating sanctions against defendants for spoliation and perjury, and further noted that, "Plaintiff bolstered the strength of its infringement claim through testimony from [its investigator.]"  *Id.*  In Florida, plaintiff's expert, again, discovered evidence of the .torrent files for nearly all of the copyrighted works on defendant's computer along with evidence establishing defendant's deletion of BitTorrent evidence.  *Malibu Media, LLC v. Weaver*, No. CV 14-01580-VMC-TBM, (M.D. Fla. Dec. 11, 2015) [Dkt. 74-3].

11

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

are in their early stages, with many cases still on-going, Plaintiff routinely identifies the

infringer.  As examples, Plaintiff is currently engaging in formal discovery where defendants

have admitted to using BitTorrent,[4] a subscriber's roommate admitted to the infringement,[5] and

other defendants have admitted to infringement through offers of judgment.[6]

_____

IPP's technology provided the underlying evidence in a case where a forensic examination of a New York defendant's hard drive revealed that he had installed and used over eleven different file destruction software programs on his computer just days before producing his computer to plaintiff's expert.  *Malibu Media, LLC v. John Doe*, No. CV 14-10155-KBF, at *6–8 (S.D.N.Y. Sept. 22, 2015) [Dkt. 39].  Ultimately, in that matter, defendant admitted to the infringement and apologized to the plaintiff.  *Malibu Media, LLC v. John Doe*, No. 14-10155-KBF (S.D.N.Y. Dec. 9, 2015) [Dkt. 93].  Again in 2016, in two other copyright cases where similar technology identified infringing IP addresses, the defendants admitted to downloading the relevant copyrighted content with their respective identified IP addresses.  *See Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1036 (9th Cir. 2018); *see Clear Skies Nevada, LLC v. Kainu*, No. CV 16-811-AC, 2017 WL 4021121, at *4 (D. Or. Aug. 21, 2017), *report and recommendation adopted*, No. CV 16-811-AC, 2017 WL 4012960 (D. Or. Sept. 12, 2017).  Later in 2016, after an extensive evidentiary hearing before the Honorable Judge Steven Locke of the United States District Court for the Eastern District of New York, the Court found that plaintiff's investigators "offered credible testimony regarding the methods that [it] used on behalf of [plaintiff] in identifying the Doe Defendant's IP address as an infringer of its copyrighted material."  *Malibu Media, LLC v. Doe*, No. CV 15-3504(JFB)(SIL), 2016 WL 4444799, at *7 (E.D.N.Y. Aug. 23, 2016). *See also Malibu Media, LLC v. Doe*, No. CV 15-2281, 2018 WL 5841866, at *3 (M.D. Pa. Nov. 8, 2018) (admitting to downloading multiple motion pictures).

[4] In the District Court of Maryland, the court allows Plaintiff to depose defendants prior to amending its complaint and serving.  *See e.g., Strike 3 Holdings, LLC v. [REDACTED]*, No. CV 18-01899-TDC (D. Md. Nov. 28, 2018) [Dkt. 15-1] (testifying at deposition that he has BitTorrent software installed on his computers, and Plaintiff learned that Defendant secured a membership to one or more of Plaintiff's websites after months of infringing Plaintiff's works via BitTorrent); *Strike 3 Holdings, LLC v. [REDACTED]*, No. CV 18-01875 (D. Md. Dec. 6, 2018) [Dkt. 11-1] (stating at deposition that the Internet service address is occupied by his tenant.  Plaintiff amended its complaint to name the tenant after its investigation revealed that the BitTorrent activity emanating from the IP address matched the tenant's publicly declared interests and profession); *Strike 3 Holdings, LLC v. [REDACTED]*, No. CV 18-00380 (D. Md. Sept. 4, 2018) [Dkt. 12-1] (failing to attend his deposition but Plaintiff amended its complaint to name defendant after its investigation revealed that the BitTorrent activity emanating from the IP address matched the defendant's publicly declared interests).  In those cases, Plaintiff has been able to either identify, or establish with substantial evidence, the infringer in the household.

[5] *See Strike 3 Holdings, LLC v. Doe*, No. CV 18-01015-CMH-MSN (E.D. Va. Oct. 24, 2018) [Dkt. 9].

[6] *See e.g. Strike 3 Holdings, LLC v. Doe*, No, CV 17-07058-EJD (N.D. Cal. Mar. 6, 2018) [Dkt. 23]; *Strike 3 Holdings, LLC v. Doe*, No. CV 17-2317-JAH(BLM) (S.D. Cal. May 18, 2018)

12

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

The D.C. Opinion's denial of discovery to Plaintiff based on the content of its motion pictures also violates Plaintiff's First Amendment rights to free speech and to petition. Copyright law has long been held to be aesthetically neutral. *See Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251, 23 S. Ct. 298, 300, 47 L. Ed. 460 (1903) (Holmes, J.) ("It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits."). While the court took issue with the supposed "aberrantly salacious" content of Plaintiff's works, "obscenity is not an appropriate defense in an infringement action, whether piggybacked on the unclean hands rubric or introduced in some other manner." *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979); *see Jartech, Inc. v. Clancy*, 666 F.2d 403, 406 (9th Cir. 1982) (concurring with holding in *Mitchell Bros.* and noting that it is the "the prevailing view on this issue.").

Finally, Plaintiff is also not what has been nebulously labeled a "copyright troll." *See Strike 3 Holdings, LLC v. Doe*, No. CV 18-03763-DLI-SJB, at *1 (N.Y.E.D. Nov. 14, 2018) [Dkt. 12] attached hereto as concurrently-filed Exhibit C (finding that analogizing to other litigants' conduct is not "specific to this case [and] there is nothing in the record to suggest that improper conduct has been engaged in by this Plaintiff against this Defendant"). Consequently, Judge Baylson has previously sounded the horn on the hazards of blanketly labeling parties as trolls: "[Plaintiff] is not what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll'—i.e., a non-producer who merely has acquired the right to bring lawsuits against alleged infringers. Rather, [Plaintiff] *is an actual producer of adult films* and owns valid copyrights, registered with the United States Copyright Office, in its works." *Malibu Media*, 950 F. Supp. at 780–81(emphasis supplied).

Plaintiff is not just the creator of the works-in-suit; it continues to create new motion pictures. "Proceeds that Strike 3 receives from settlements go back into making the company

_____

[Dkt. 17]; *Strike 3 Holdings, LLC v. Doe*, No. CV 18-02019-YGR (N.D. Cal. Oct. 1, 2018) [Dkt. 36].

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

whole, including investing in better pay for artists and performers, better quality productions, and hiring and providing benefits for employees." Dkt. 6-1, at 9 (citing Decl. of Greg Lansky (at ¶ 32)).  This is the purpose of copyright: "To promote the progress of" the arts by encouraging the creation of new works.  U.S. CONST. Art. 1, § 8, cl. 8.  Indeed, Plaintiff's motion pictures support an expanding workforce of nearly seventy-five employees, including editors and producers, all contributing to the creative marketplace.  *See* Dkt. 6-2, at ¶ 14.

Plaintiff "makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses" and not from litigation.  *See id.* at ¶ 32.  Plaintiff's litigation is not a primary source of revenue, but a way to compensate sales lost to piracy and to redirect infringers and potential infringers to the legitimate marketplace.  When violations of a party's rights are – as here – widespread, and infringers numerous, it is reasonable that Plaintiff would enforce its copyrights against the most egregious offenders.  That defendants tend to settle has no bearing on Plaintiff's conduct.  *See e.g.*, *Malibu Media*, No. CV 15-4381 JFK, 2015 WL 4923114 at *1 n.4 ("[T]here are any number of reasons free from coercion that a defendant may choose to settle, including culpability.").  Accordingly, "'Plaintiff has a constitutional right to file a lawsuit and engage in discovery to determine whether a defendant or someone using a defendant's IP address infringed on its protected works,' provided Plaintiff has a good-faith basis under Rule 11 for bringing suit."  *Khumba Film (PTY.), Ltd. v. Does 1-14*, No. CV 14-02075-WYD-MEH, 2014 WL 4494764, at *2 (D. Colo. Sept. 12, 2014) (citation omitted).

### 3.   Defendant's Request for an Evidentiary Hearing Is Unavailing

Additionally, Defendant's off-the-cuff request for an evidentiary hearing into the facts presented in Plaintiff's Motion for Leave is premature.  Dkt. 10, at 6.  This request is a disservice to judicial economy and would unnecessarily waste time and resources from the Court and Plaintiff.  *See* Fed. R. Civ. P. 1.  Further, this Court need not hold an evidentiary hearing to "step outside the four corners of *Cobbler*."  *See* Dkt. 10, at 6.  Plaintiff struggles to figure out what in *Cobbler* even suggests anything close to what Defendant suggests.  Indeed, *Cobbler* as set forth above makes it clear that at the outset of any litigation such as this one, the

14

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

plaintiff is entitled to at least getting the name of the subscriber without anything else having to happen before that information is provided.  Thus, this vain resort to *Cobbler* is simply unavailing and irrelevant.

First, Defendant is certainly entitled to discovery once the pleadings are closed, and Plaintiff's facts are entitled to a favorable presumption at these early stages.  Defendant's bare Motion here has not raised anything that would contravene this presumption let alone suggests that any fact presented in Plaintiff's motion to be allowed to subpoena the ISP is false.  Second, counsel for Defendant is already engaged in discovery with Plaintiff in a similar litigation involving the same technology and declarants in *Strike 3 Holdings, LLC v. Doe*, No. CV 17-01731-TSZ (W.D. Wash. Dec. 20, 2018) [Dkt. 62].  Additional discovery into similar technological matters would needlessly duplicate discovery, run up expenses for both parties, and delay proceedings.

### 4.    Defendant's Counsel's Meet-and-Confer Was Wholly Deficient

Defendant's counsel also makes a great show about the single email he sent to undersigned asking to dismiss this matter.  *See* Dkt. 10 at 4.  This abortive attempt to satisfy the Court's meet and confer requirement is woefully deficient.  *See* E.D. Cal. LR 251(b) ("[A] motion made pursuant to Fed. R. Civ. P. [45] . . . shall not be heard unless (1) the parties have conferred and attempted to resolve their differences, and (2) the parties have set forth their differences and the bases therefor in a Joint Statement re Discovery Disagreement. Counsel for all interested parties shall confer in advance of the filing of the motion or in advance of the hearing of the motion *in a good faith effort to resolve the differences that are the subject of the motion*.") (emphasis supplied).

Here, nothing like that was done.  Rather, Defendant's counsel's sole communication, in an email *sent at 6:26 p.m. on Friday,* December 7, 2018, was his contention that his client was elderly, had no idea what the case was about, and then he simply suggested that Plaintiff

15

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

1    unilaterally dismiss the suit so his client could enjoy the holidays.[7]  *See* Declaration of Lincoln

2    D. Bandlow ("Bandlow Decl."), ¶2.  What the email very clearly does not contain are the words

3    "motion to quash" or any suggestion of one.  The email in no way envisages any deeper

4    discussion into the parties' positions, whether additional discussion is to take place (it did not),

5    or even mention the subpoena at issue in this Motion.  Relevance aside, the Rule is intended to

6    foster a dialogue; one-sided letters are insufficient.  *See Winters v. Jordan*, No. CV 09-0522-

7    JAM-KJN, 2013 WL 5348092, at *4 (E.D. Cal. Sept. 23, 2013) (noting that the Local Rules

8    "merely required the parties to have some personal discussions as opposed to a mere exchange

9    of letters").

10          Second, a single email without so much as a follow up is wholly deficient.  Indeed, what

11    happened next was particularly misleading by Defendant's counsel.  At 12:15 p.m. on Monday,

12    December 10, 2018, which was the first business day after Defendant's counsel's 6:26 p.m.

13    email from the previous Friday, Defendant's counsel sent an email to the Courtroom Deputy for

14    the magistrate assigned to this case indicating that Defendant and his/her counsel was prepared

15    to participate in the "informal conference" procedure put in place by this Court.  *See* Bandlow

16    Decl. ¶3. Indeed, he gave dates for doing so either virtually immediately or through January of

17    2019.  *Id.*  In that email to the Court Deputy, did he mention a possible motion to quash?  Did

18    he say "I still may have to discuss a possible motion to quash with opposing counsel" or words

19    to that effect?  Nope and nope.  Rather, he made it clear that he and his client were proceeding

20    with the mechanism put in place by this Court for proceeding in this case *after the subpoena to*

21    *the ISP identified his client to Plaintiff*!  Thus, he made it implicitly, if not explicitly, clear that

22    he was not going to be filing a motion to quash.

23          He did not engage in any follow up correspondence with Plaintiff's counsel regarding

24    his December 7, 2018 demand that the case be dismissed.  Rather, just six days after

25

26    _____

      [7] Defendant's counsel's "you must take my word as if it is the word of God and not require any

27    evidence supporting it" approach to litigation is adorable, but unfortunately for him not how

      litigation or our system of justice works.

28                                                        16

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

representing to Plaintiff's counsel and the Court Deputy that he and his client were prepared to

take part in the informal conference, on December 16 he filed this present Motion.

Thus, Defendant's counsel in no way demonstrated any efforts to meet and confer on

this Motion or otherwise "allow for any meaningful meet-and-confer discussions, and certainly

did not allow for the drafting of a true joint statement contemplated by Local Rule 251."

*Winters v. Jordan*, No. CV 09-0522-JAM-KJN, 2013 WL 5348092, at *4 (E.D. Cal. Sept. 23,

2013). As Defendant's counsel is certainly aware, since he is representing other defendants in

other cases against Plaintiff, undersigned counsel for Plaintiff has responded to Defendant's

counsel's emails in the past. Hence it is troubling that counsel believes that a single email

without a response constitutes a "good faith" conference to discuss quashing or modifying.

Indeed, this Court's personal rules make clear that it does not.

> The obligation to meet and confer is made doubly clear by the Local Rules for
> the Eastern District of California. The Local Rules unequivocally state that
> discovery motions will not be heard unless (1) the parties have conferred and
> attempted to resolve their differences, and (2) the parties have set forth their
> differences and the bases for those differences in a Joint Statement. LR 251(b).
> The sole exceptions to these requirements are "(1) when there has been *a
> complete and total failure to respond* to a discovery request or order, or (2) when
> the only relief sought by the motion is the imposition of sanctions." LR 251(e).
>
> Finally, [Judge Delany's] standing orders, available at
> [http://www.caed.uscourts.gov/caednew/assets/File/Judge%20Delaney%20Teleph
> onic%20Discovery%20Conferences_082018.pdf], state in no uncertain terms that
> meet and confer requirements are strictly enforced. [. . .] *The parties are
> responsible for their own awareness of the Federal Rules of Civil Procedure, this
> court's Local Rules, and the standing orders of the judges before whom they are
> proceeding.*

*Evans v. City of Vallejo*, No. CV 17-01619 TLN AC, 2018 WL 4582605, at *2 (E.D. Cal. Sept.

25, 2018) (emphasis supplied) (noting email is insufficient). In clear bold text, the Court's

Informal Telephonic Conferences re Discovery Disputes state "**The parties must meet and

confer in person or via telephone or video conferencing (i.e. in voice to voice dialogue;

other forms of communication are not sufficient)**." There is no question that Defendant's

counsel failed in his obligation to follow these Rules. Indeed, this Court has previously

admonished Defendant's counsel for making claims that "border[] on the frivolous," *see Malibu*

17

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification
of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

*Media, LLC v. Doe*, No. CV 16-1733-JAM-KJN, 2017 WL 840652, at *4 (E.D. Cal. Mar. 3, 2017), and implying that Defendant attempted a good faith meet-and-confer here is no different. Defendant's Motion, failing this prerequisite and failing on the merits as well, cannot succeed.

##       V.       **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully request the Court deny Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7.

Dated: January 16, 2019                    FOX ROTHSCHILD LLP

                                           Respectfully submitted,


                                           By: _____
                                           Lincoln Bandlow, Esq.
                                           FOX ROTHSCHILD LLP

                                           *Attorney for Plaintiff*
                                           Strike 3 Holdings, LLC

18

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD

1

2

### CERTIFICATE OF SERVICE

3

I hereby certify that on January 16, 2019, I electronically filed the foregoing document

4

with the Clerk of the Court using CM/ECF.  However, since Defendant is still unknown, and

5

not represented by counsel, I was unable to serve a copy of this Response or the accompanying

6

documents on Defendant.

7

By: /s/ *Lincoln Bandlow*
Lincoln Bandlow

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

Plaintiff's Opposition to Defendant's Motion to Quash the Subpoena on AT&T and for a Modification
of the Order at Docket 7

Case No. 2:18-cv-02637-MCE-CKD